# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| CONFIRM LABORATORY, LLC § <br> § <br> v. § <br> § CIVIL ACTION NO. 3:23-CV-0460-S <br> XAVIER BECERRA, Secretary, United § <br> States Department of Health and Human § <br> Services § | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Xavier Becerra's Motion to Dismiss ("Motion") [ECF No. 13]. The Court has reviewed the Motion, the Appendix in Support of Defendant's Motion to Dismiss ("Appendix") [ECF No. 14], Plaintiff Confirm Laboratory, LLC's Response to Defendant's Motion to Dismiss ("Response") [ECF No. 26], Defendant's Reply to Support Motion to Dismiss ("Reply") [ECF No. 29], Plaintiff's Sur-Reply in Opposition to HHS's Motion to Dismiss ("Sur-Reply") [ECF No. 32], Defendant's Final Reply to Support His Motion to Dismiss [ECF No. 35], and the applicable law. For the following reasons, the Court **GRANTS** the Motion.

## I. BACKGROUND

Plaintiff Confirm Laboratory, LLC, provides laboratory services to Medicare beneficiaries in Dallas, Texas, and the surrounding area. Verified Compl. ("Complaint") [ECF No. 1] ¶¶ 4, 19. Medicare is a national health insurance program established through the Social Security Amendments of 1965 and is managed by the Centers for Medicare and Medicaid Services ("CMS"), which is an agency within the United States Department of Health and Human Services ("HHS"). *Id.* ¶¶ 5, 9. As a Medicare provider, Plaintiff submits claims for payment to Novitas Solutions, a Medicare Administrative Contractor. *Id.* ¶ 11. Those claims are subject to review by a Unified Program Integrity Contractor ("UPIC") for suspected fraud, waste, abuse, and improper payments. *Id.*

On May 12, 2022, the UPIC Qlarant issued a notice of suspension of Medicare payments to Plaintiff pursuant to 42 C.F.R. § 405.371(a)(2). *Id.* ¶ 22. According to Qlarant, CMS determined that there was a "credible allegation of fraud" related to Plaintiff's services billed to Medicare and suspended all Medicare payments to Plaintiff. *Id.* ¶¶ 22-25. Plaintiff filed a rebuttal statement with Qlarant on July 18, 2022. *Id.* ¶ 49. Qlarant did not respond to the rebuttal statement. *Id.* ¶ 63.

On October 27, 2022, Qlarant sent Plaintiff a Notice of Termination of Suspension of Medicare Payments, which allegedly terminated the suspension immediately. *Id.* ¶¶ 27-28. Plaintiff alleges that, despite the termination letter, CMS continued to suspend its Medicare payments. *Id.* ¶¶ 28-29. While the suspension was still ongoing, Defendant Xavier Becerra, in his capacity as Secretary of HHS, issued two notices of Medicare overpayment to Plaintiff: a November 25, 2022, notice for $28,448.28, and a December 8, 2022, notice for $1,983,427. *Id.* ¶¶ 33-34.

Plaintiff filed suit regarding the May 2022 suspension and its continuation after the October 27, 2022, notice of termination. *See id.* ¶¶ 2-3. Specifically, Plaintiff alleges that Defendant has illegally confiscated over $417,445 in suspended payments, of which at least $245,698 was incurred after October 27, 2022, without the opportunity for a hearing or judicial review. *Id.* Plaintiff brings claims for violation of its due process, violation of its patients' due process rights and access to Medicare, arbitrary and capricious actions by Defendant, ultra vires withholding of Medicare payments, and mandamus. *Id.* ¶¶ 67-87. Plaintiff also requests a temporary restraining order, preliminary injunction, permanent injunction, and declaratory relief. *Id.* ¶¶ 88-97. Defendant moves to dismiss based on Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and 12(b)(6) for failure to state a claim upon which relief can

be granted. *See* Mot. 1-2. Because the Court finds that it lacks subject matter jurisdiction, it does not reach Defendant's 12(b)(6) arguments.[1]

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *La. Real Est. Appraisers Bd. v. Fed. Trade Comm'n*, 917 F.3d 389, 391 (5th Cir. 2019) (quoting *Texas v. Travis Cnty.*, 910 F.3d 809, 811 (5th Cir. 2018)). Courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may challenge the subject matter jurisdiction of the district court to hear a case. The district court may dismiss for lack of subject matter jurisdiction based on the complaint alone. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The court must accept all factual allegations in the complaint as true. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001) (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)). If the court determines that it lacks subject matter jurisdiction, it must dismiss the action. FED. R. CIV. P. 12(h)(3).

---

[1] "A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction is considered by the court before any other challenge because 'the court must find jurisdiction before determining the validity of a claim.'" *Sharpe v. Roman Cath. Diocese of Dall.*, No. CIV. A. 3:02-CV-0552-G, 2002 WL 31165987, at *3 (N.D. Tex. Sept. 27, 2002) (quoting *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994)), *aff'd*, 71 F. App'x 380 (5th Cir. 2003). "When a court must dismiss a case for lack of jurisdiction, the court should not adjudicate the merits of the claim." *Pillar Panama, S.A. v. DeLape*, 326 F. App'x 740 (5th Cir. 2009) (quoting *Stanley v. CIA*, 639 F.2d 1146, 1157 (5th Cir. Unit B March 1981)).

## III. ANALYSIS

When dealing with claims "arising under" the Medicare Act, federal courts only have jurisdiction over a "final decision" of HHS. *Fam. Rehab., Inc. v. Azar*, 886 F.3d 496, 500 (5th Cir. 2018) (citing 42 U.S.C. § 405(g)-(h)[2]). "A claim arises under the Medicare Act if 'both the standing and the substantive basis for the presentation' of the claims is in the Medicare Act." *RenCare, Ltd. v. Humana Health Plan of Tex., Inc.*, 395 F.3d 555, 557 (5th Cir. 2004) (quoting *Heckler v. Ringer*, 466 U.S. 602, 606 (1984)). Ordinarily, a provider may only file suit in a district court after exhausting its administrative remedies. *Fam. Rehab.*, 886 F.3d at 500 n.4 (citations omitted). This means a provider must either (1) satisfy all four stages of administrative appeal and receive a decision from the Medicare Appeals Council ("Council"), or (2) escalate its claim to the Council and wait 180 days for the Council to act or fail to act. *Id.* at 500-01.

It is undisputed that Plaintiff's claims—which challenge a Medicare suspension as a Medicare provider—arise under the Medicare Act. *See* Mot. 1; Resp. 12-13. Therefore, the Court considers whether Plaintiff exhausted its administrative remedies. Plaintiff does not allege that it exhausted administrative remedies by receiving a decision from the Council or waiting 180 days after escalating its claim to the Council. *See* Compl. ¶ 66; Sur-Reply 5.[3] Instead, Plaintiff invokes three exceptions to the administrative exhaustion requirement. Plaintiff argues that the Court has subject matter jurisdiction under: (1) the collateral claim exception, (2) the "no review at all" exception, and (3) mandamus jurisdiction. Resp. 5.

---

[2] "Although § 405(g) is a provision of the Social Security Act, it has been made applicable to Medicare by 42 U.S.C. § 1395ff(b)(1)(A)." *Fam. Rehab.*, 886 F.3d at 500 n.4 (citations omitted).

[3] Plaintiff argues that the exhaustion requirement is "excused" because it has been deprived of an administrative process. *See* Compl. ¶ 66; *see also* Resp. 1-2. Plaintiff only asserts three bases for jurisdiction, none of which require exhaustion. Therefore, the Court need not address this argument.

### *A. Collateral Claim Exception*

Plaintiff argues that the Court has subject matter jurisdiction under the collateral claim exception established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See* Compl. ¶ 6; Resp. 5-8. In *Eldridge*, the Court held that "jurisdiction may lie over claims (a) that are 'entirely collateral' to a substantive agency decision and (b) for which 'full relief cannot be obtained at a postdeprivation hearing.'" *Fam. Rehab.*, 886 F.3d at 501 (quoting *Eldridge*, 424 U.S. at 330-32). A claim is not collateral if it requires the court to "immerse itself" in the substance of the underlying Medicare claim, requires the court to demand a "factual determination" as to the application of the Medicare Act, or if it seeks relief that would be "'administrative,' i.e., the substantive, permanent relief that the plaintiff seeks or should seek through the agency appeals process." *Id.* (citations omitted). Put another way, "[i]f the court must examine the merits of the underlying dispute, delve into the statue and regulations, or make independent judgments as to plaintiffs' eligibility under a statute, the claim is not collateral." *Id.* at 503 (citations omitted). A plaintiff establishes that full relief cannot be obtained at a postdeprivation hearing if it "'raise[s] at least a colorable claim' that erroneous recoupment will 'damage [it] in a way not recompensable through retroactive payments.'" *Id.* at 504 (second alteration in original) (quoting *Eldridge*, 424 U.S. at 331).

As to the first *Eldridge* element, the Court concludes that Plaintiff's claims are not collateral to a substantive agency decision for two reasons. First, Plaintiff seeks substantive, administrative relief in the form of monetary repayment. Plaintiff asks the Court to compel Defendant to "immediately refund the $417,445.00 confiscated" as well as "$245,698.00 and any other payments withheld after the suspension was terminated." Compl. ¶¶ 2-3. In fact, each of Plaintiff's claims request relief related to the amount of money Defendant has allegedly withheld. Claims 1 through 4 request injunctive relief to halt the post-October 27, 2022, suspension of

payments, *id.* ¶¶ 73, 77, 80, 83, while Claim 5 asks the Court to compel Defendant to cease its withholding of $417,445 in payments, *id.* ¶ 87. "Although [Plaintiff] sues for money damages rather than Medicare benefits, the money damages [it] seeks would compensate [it] for [Defendant's] premature recoupment[.]" *Griego v. Leavitt*, No. CIV. A. 3:07-CV-1708-D, 2008 WL 2200052, at *10 (N.D. Tex. May 16, 2008) (citation omitted). Plaintiff's requests for money are thus "an indirect suit for Medicare benefits" and are not collateral. *Id.*

Plaintiff's attempt to frame its requests as procedural is unpersuasive. Plaintiff argues that its claims are about procedural and constitutional issues since it "does not seek an 'award of benefits.'" Resp. 7 (quoting *Heckler*, 466 U.S. at 614). As evidenced by the Complaint's focus on the amount of money Plaintiff is owed, Plaintiff's claims seek "essentially substantive relief." *Fam. Rehab.*, 886 F.3d at 502-03 (citation omitted). Plaintiff admits that in a previous lawsuit it "asserted a right to hearing before its payments are suspended," but that its "position has evolved and Plaintiff [now] seeks injunctive relief that stops the withholding [of payments]. . . and that the government be ordered to return illegally confiscated payments." Resp. 8 & n.6. "Although Plaintiff has framed [its] claim[s] in constitutional terms by alleging a denial of appeal rights[,] . . . it essentially seeks to prevent improper recoupment and suspension of its Medicare payments, which is clearly an administrative remedy." *Citadel Healthcare Servs. Inc. v. Sebelius*, No. 3:10-CV-1077-BH, 2010 WL 5101389, at *4 (N.D. Tex. Dec. 8, 2010) (citation omitted); *see also Affiliated Pro. Home Health Care Agency v. Shalala*, 164 F.3d 282, 285 (5th Cir. 1999) (finding a claim framed as constitutional that seeks compensatory damages and the termination of a suspension of Medicare payments as "unquestionably administrative in nature"). Plaintiff's procedural claims are "inextricably intertwined" with its claim for benefits and are therefore not collateral. *Heckler*, 466 U.S. at 614.

6

Second, Plaintiff's claims would require the Court to delve into Medicare statutes and regulations as well as the merits of Defendant's suspension of Plaintiff. Defendant suspended Plaintiff's benefits on suspicion of fraud. Compl. ¶¶ 22-23. Plaintiff counters that such benefits were "earned," *see id.* ¶¶ 69-71 (Count 1), 76-77 (Count 2), 79 (Count 3), 82 (Count 4), 87 (Count 5), and that Defendant's withholding of payment is "illegal" and "*ultra vires*,"[4] *see id.* ¶¶ 73 (Count 1), 77 (Count 2), 80 (Count 3), 83 (Count 4), 87 (Count 5). Plaintiff dedicates almost five full pages of the Complaint to why there was no fraud, *see id.* ¶¶ 49-61, while Defendant contends that the Plaintiff's payment submissions "did not meet Medicare requirements," Mot. 1. Furthermore, Plaintiff describes its suspension as impermissibly "indefinite." *See* Compl. ¶¶ 6, 16, 42, 44, 49, 64, 69. Defendant responds that the suspension cannot be indefinite because it needs to be re-evaluated every 180 days under Medicare regulations. Reply 7-8 (citing 42 C.F.R. § 405.371(b)(1)-(2)). Each of these disputes are central to Plaintiff's claims and concern Medicare regulations about valid invoices and suspension protocol. Accordingly, for the Court to fully address Plaintiff's claims that its earned payments were improperly withheld the Court would "necessarily have to immerse itself in [Medicare] regulations and make a factual determination as to whether [Plaintiff] was actually in compliance." *Affiliated Pro. Home Health*, 164 F.3d at 285-86; *see also Citadel*, 2010 WL 5101389, at *4 (finding a plaintiff's claims that its constitutional rights were violated through improper enforcement of Medicare regulations would necessarily lead the court to immerse itself in those regulations and make a factual determination regarding plaintiff's compliance with the same).[5]

---

[4] The term ultra vires means "beyond the powers." *Fontenot v. City of Houston*, No. 4:12-CV-3503, 2014 WL 3891682, at *4 (S.D. Tex. Aug. 7, 2014) (citing BLACK'S LAW DICTIONARY 1662 (9th ed. 2009), *aff'd*, 647 F. App'x 402 (5th Cir. 2016).

[5] Because the Court concludes that the first *Eldridge* element is not satisfied it does not reach the second.

### *B. No Review at All*

Plaintiff relies on *Shalala v. Illinois Council on Long Term Care, Inc.*, to assert that this Court has jurisdiction because Section 405 "would not simply channel review through the agency[] but would mean no review at all." 529 U.S. 1, 19 (2000); *see* Compl. ¶ 7 (quoting *Ill. Council*, 529 U.S. at 19); Resp. 6, 9-11. As part of this argument, Plaintiff also claims Section 405(g) jurisdiction through 42 U.S.C. §§ 1395ii and 1395ff(b). Compl. ¶ 7.

Neither Sections 1395ii nor 1395ff(b) establish subject matter jurisdiction. Section 1395ii applies select subsections of Section 405 to the Medicare Act, which are not at issue here. *Am. Med. Hospice Care, LLC v. Azar*, No. 5:20-CV-757 DAE, 2020 WL 9814144, at *7 (W.D. Tex. Dec. 9, 2020). "Notably, Congress did not use § 1395ii to apply to subsection (g) [of Section 405], which provides judicial review to the Medicare Act." *Id.* Therefore, Plaintiff cannot establish jurisdiction through Section 1395ii. Similarly, Subsection 1395ff(b) concerns appeal rights of an initial determination. *Id.* at 6 (citation omitted). Because Plaintiff does not allege receiving an initial determination,[6] it cannot establish subject matter jurisdiction under this section as well.

As to the "no review at all" exception, federal question jurisdiction is available under 28 U.S.C. § 1331 when going through the Section 405 appeals process "would not simply channel review through the agency[] but would mean no review at all." *Fam. Rehab.*, 886 F.3d at 501, 504 (quoting *Ill. Council*, 529 U.S. at 17, 19). This "narrow" exception is only available when going through the agency would result in "*complete* preclusion of judicial review." *Id.* at 504-05 (quoting *Ill. Council*, 529 U.S. at 23). Therefore, a plaintiff must show either that its claim "administratively is 'a legal impossibility'" or that it faces "a serious practical roadblock to having [its] claims

---

[6] As discussed below, Plaintiff received overpayment notices that qualify as initial determinations. However, Section 1395ff(b) only gives a court jurisdiction over those initial determinations after a Section 405(g) hearing has been held and HHS has issued a final decision, neither of which is alleged to have happened. *See* 42 U.S.C. § 1395ff(b)(1)(A).

8

reviewed in any capacity, administratively or judicially." *Id.* at 505 (alteration in original) (quoting *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 655, 659 (5th Cir. 2012)).

Plaintiff has not shown that it cannot have its claims reviewed, either practically or legally. Administrative review is available for Medicare payments that are withheld subject to an overpayment determination, as is the case here. CMS suspended Plaintiff's payments under 42 C.F.R. § 405.372(a)(2) due to a credible allegation of fraud. Compl. ¶ 22. In the October 27, 2022, letter regarding Plaintiff's suspension, Qlarant informed Plaintiff that CMS had discovered overpayments and that overpayment demand letters would be issued. App. 001.[7] Plaintiff was issued overpayment demand letters on November 25, 2022, and December 8, 2022. Compl. ¶¶ 33-34; *see also* App. 002-018. These overpayment determinations count as "initial determinations" that "trigger[] the multi-step administrative appeals process for a provider . . . to follow if it is dissatisfied with the initial overpayment determination." *True Health Diagnostics, LLC v. Azar*, 392 F. Supp. 3d 656, 661 (E.D. Tex. 2019) (citing 42 C.F.R. § 405.904(a)(2)); *see also* App. 006, 016 ("If you disagree with this overpayment decision, you may file an appeal."). Only once Plaintiff receives a decision from the overpayment appeals process can it seek review in federal court. *True Health Diagnostics*, 392 F. Supp. 3d at 661 (citing 42 U.S.C. § 1395ff(b)(1)(A); 42 C.F.R. § 405.1136; 42 C.F.R. § 405.1130). Therefore, Plaintiff has not demonstrated complete preclusion of judicial review.

---

[7] A court may consider documents outside the pleadings that are attached to the motion to dismiss, referred to in the complaint, and central to the plaintiff's claim. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). Defendant attached the October 27, 2022, letter from Qlarant to the Motion, as well as the two subsequent overpayment determination letters. *See* App. Because each of these documents are referenced in the Complaint and are central to Plaintiff's claim that Medicare payments were improperly withheld, the Court considers them in evaluating the Motion.

Plaintiff further contends that appeals for overpayments are irrelevant since its challenge is to the Medicare payment suspension itself, "which [was] imposed without a right to a hearing or administrative appeal." Resp. 11; *see also* Compl. ¶ 17 n.3 (noting that suspensions are not considered initial determinations for purposes of appeal rights). However, "[t]he fact that the agency might not provide a hearing for that *particular contention*, or may lack the power to provide one . . . is beside the point because it is the 'action' arising under the Medicare Act that must be channeled through the agency." *Ill. Council*, 529 U.S. at 23 (citations omitted). As explained above, Plaintiff was subject to an overpayment determination, which has its own appeals process. Plaintiff acknowledges this, explaining that "the crux of the matter is whether HHS has illegally taken Plaintiff's property and its 'approved' Medicare payments that ultimately will be 'applied to reduce or eliminate any *overpayment determined* by the Medicare contractor.'" Resp. 7 (emphasis added) (citations omitted); *see also id.* ("[Plaintiff] claims that the government has wrongly confiscated its property, i.e., earned Medicare payments that HHS is applying to *reduce an alleged overpayment liability.*" (emphasis added)). Once Plaintiff exhausts the administrative appeals process, it may bring its claims—including "any statutory or constitutional contention that the agency does not, or cannot, decide"—before the court. *Ill. Council*, 529 U.S. at 23-24 (citations omitted). Because Plaintiff has not demonstrated that channeling review through the agency would mean no review at all, the "no review at all" exception does not apply. *See Arthritis Treatment of Tex., PLLC v. Azar*, No. 3:16-CV-3470-S, 2018 WL 6592664, at *6. (N.D. Tex. Dec. 14, 2018).

### *C. Mandamus Jurisdiction*

Finally, Plaintiff maintains the Court has mandamus jurisdiction. Compl. ¶ 3; Resp. 6, 11-18. Under 28 U.S.C. § 1361, "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof

10

to perform a duty owed to the plaintiff." Mandamus is "an extraordinary remedy . . . reserved for extraordinary situations." *Winningham v. U.S. Dep't of Hous. & Urb. Dev.*, 512 F.2d 617, 620 (5th Cir. 1975) (citations omitted). For mandamus jurisdiction to exist, a plaintiff must ask the court to compel the defendant to complete "affirmative actions" related to a "nondiscretionary duty owed to plaintiff." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 766 (5th Cir. 2011) (citations omitted). Conversely, Section 1361 does not confer jurisdiction over other types of relief, "such as injunctive relief" that seeks "the undoing of injurious acts and the restoration of the status quo" or "a remedy to restrain the doing of injurious acts." *Id.* As it relates to Medicare cases, mandamus jurisdiction is not precluded by 42 U.S.C. § 405(h) and is available to plaintiffs "to review otherwise unreviewable procedural issues." *Fam. Rehab.*, 886 F.3d at 505 (quoting *Wolcott*, 635 F.3d at 764). A plaintiff may seek a writ of mandamus without exhausting all other avenues of relief. *See id.* at 506.

The Court lacks mandamus jurisdiction in this matter for two reasons. First, Plaintiff seeks only injunctive relief. Each of Plaintiff's claims ask the Court to enjoin Defendant from an act as opposed to compelling Defendant to affirmatively perform a nondiscretionary duty. Claims 1 through 4 all end with: "Accordingly, Plaintiff is entitled to injunctive relief[.]" Compl. ¶¶ 73, 77, 80, 83. Claim 5 states that this Court "should issue a decision compelling Defendant to cease its continued withholding" of Plaintiff's Medicare payments. *Id.* ¶ 87. Plaintiff's requests for a temporary restraining order, preliminary injunction, permanent injunction, and for declaratory relief likewise ask the court to enjoin Defendant from certain acts. *See id.* ¶¶ 88-97. Plaintiff summarizes that it "seeks injunctive relief that restrains HHS from its continued illegal confiscation of payments and seeks affirmative injunctive relief that orders the government to return the provider's property . . . thereby reestablishing the *status quo*." Resp. 6-7; *see also id.* 5

11

("Plaintiff maintains that the [C]ourt has mandamus jurisdiction to order the return of payments illegally confiscated."). The Court does not have mandamus jurisdiction over Plaintiff's claims because they "would require the court to prohibit [Defendant] from acting in a certain manner in the future rather than compel [Defendant] to affirmatively perform a presently existing duty under the law." *Wolcott*, 635 F.3d at 767; *see also Supreme Home Health Servs., Inc. v. Azar*, 380 F. Supp. 3d 533, 551 (W.D. La. 2019) (finding no mandamus jurisdiction because the plaintiffs sought an "injunction prohibiting Defendants from recouping from Plaintiffs' Medicare payments"), *aff'd*, 812 F. App'x 229 (5th Cir. 2020).

In its Response, Plaintiff argues that it is "entitled to the issuance of an order of mandamus requiring Defendants [sic] to properly adjudicate its administrative appeal pursuant to 42 U.S.C. § 1395ff." Resp. 11. Plaintiff also tries to frame its request as a "temporary abatement of the suspension and withholding of its Medicare payments until hearing." Sur-Reply 6. These arguments are unavailing because those requests do not appear in the Complaint, which only seeks injunctive relief. *See generally* Compl. The Court will not consider "theories that are first raised in a response without having been referenced in the pleadings" as they are "not properly before the Court when it considers a motion to dismiss." *See Phalanx Grp. Int'l v. Critical Sols. Int'l*, No. 3:18-CV-0244-B, 2019 WL 5425480, at *5 (N.D. Tex. Oct. 22, 2019) (citation omitted); *see also Green v. Harris Cnty.*, No. CV H-16-893, 2019 WL 338243, at *5 (S.D. Tex. Jan. 28, 2019) ("[A] court examines the allegations in the complaint in order to determine the nature of a plaintiff's cause of action." (citing *Parker v. Graves*, 479 F.2d 335, 336 (5th Cir. 1973))).

Second, Plaintiff does not identify a nondiscretionary duty Defendant purportedly owes. According to Plaintiff, Defendant had a "clear duty to . . . cease its continued withholding of Plaintiff's earned Medicare payments . . . [and to give Plaintiff] an immediate refund of

$245,698.00 and any other payments withheld after the suspension was terminated." Compl. ¶ 3. Plaintiff also alleges that Plaintiff's continued withholding of payments is illegal. *Id.* ¶¶ 28, 38. However, Plaintiff does not allege a statutory basis for Defendant's duty. *See Dunn-Campbell Royalty Int., Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1288 (5th Cir. 1997) ("The legal duty must be set out in the Constitution or by statute[.]" (citing *Giddings v. Chandler*, 979 F.2d 1104, 1108 (5th Cir.1992))). Instead, Plaintiff acknowledges that CMS has a statutory right to suspend payments where, as here, it suspects fraud. *See* Compl. ¶¶ 13-15. Because "Plaintiff cites to no authority establishing as a matter of law that Defendant has a clearly established duty[, ]so plainly established as to be free from doubt[,]" the Court concludes that Plaintiff has not identified a nondiscretionary duty owed to it. *Infinity Healthcare Servs., Inc. v. Azar*, 349 F. Supp. 3d 580, 586 (S.D. Tex. 2018). "Accordingly, Plaintiff has not met its burden to establish that the Court has subject matter jurisdiction over Plaintiff's mandamus claim[.]" *Id.*

Plaintiff attempts to expand its petition for mandamus in its Response by stating that the nondiscretionary duty owed to Plaintiff is "clearly established under the Medicare Act in requiring payment of Plaintiff's claims in accordance with the statute and regulations *and* the concomitant duty of returning the provider's property, i.e., refund illegally confiscated payments[,]" under "42 U.S.C. §§ 1395g and 1395h." Resp. 14; *see also id.* 16-17; Sur-Reply 7-8. But neither of these statutes are cited or referenced in the Complaint. *See generally* Compl. For the reasons explained above, the Court will not consider theories absent from the Complaint.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Xavier Becerra's Motion to Dismiss. Because the Court lacks subject matter jurisdiction, Plaintiff Confirm Laboratory, LLC's claims are **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED.**

SIGNED March 28, 2024.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**